679 F.2d 960
 220 U.S.App.D.C. 142
 Mary Anne FLANNERY and William Flannery, Appellants,
v.
PRESIDENT AND DIRECTORS OF GEORGETOWN COLLEGE, t/a
Georgetown University Hospital, and its Employees
and Agents.
 No. 81-2124.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued April 23, 1982.
Decided June 8, 1982.
As Amended June 8, 1982.
 
 Appeal from the United States District Court for the District of Columbia (D.C. Civil Action No. 80-02588).
 Brian J. Nash, Silver Spring, Md., with whom Hugh E. Donovan, Silver Spring, Md., was on the brief, for appellants.
 Cynthia C. Cannady, Washington, D. C., with whom Brendan V. Sullivan, Jr. and John K. Villa, Washington, D. C., were on the brief, for appellees.
 Before WRIGHT and WALD, Circuit Judges, and BONSAL,* Senior District Judge.
 Opinion for the court per curiam.
 
 
 1
 Dissenting opinion filed by Circuit Judge WALD.
 
 PER CURIAM:
 
 2
 Appellant Mary Anne Flannery had breast enlargement surgery performed by appellees. After the surgery she developed hemopneumothorax (essentially blood and air in the lungs), apparently as a result of a local anesthetic procedure called an intercostal nerve block. While Mrs. Flannery had been informed of the risks of the surgery itself, she had not been warned of any risks associated with the anesthetic procedure. At the close of appellants' case, the trial judge directed a verdict for appellees on the issue of informed consent. This ruling is the only issue presented for appeal. We affirm.
 
 
 3
 Whenever significant doubt exists, the better practice in such cases is not to take the case away from the jury, but rather to grant a judgment n. o. v. where necessary. See 9 C. Wright & A. Miller, Federal Practice and Procedure § 2533 at 586 (1971) ("appellate courts have repeatedly said that it is usually desirable to take a verdict, and then pass on the sufficiency of the evidence on a post-verdict motion"). In our view, it is unfortunate that the District Court did not follow the practice in this case.
 
 
 4
 As to the substance of the informed consent issue, however, the record clearly demonstrates that no warning of hemopneumothorax was required. On the other hand, pneumothorax (a collapsed lung) appears to have been a recognized risk of the anesthetic procedure chosen, occurring in roughly one in a thousand cases. Transcript (Tr.) 205. The fact that plaintiff developed the more serious hemopneumothorax should not excuse a failure to warn of the less serious pneumothorax.
 
 
 5
 Nonetheless, proof of an undisclosed risk is only one element of a plaintiff's case. There must also exist a causal relationship between the physician's failure adequately to divulge and damage to the patient. "A causal connection exists when, but only when, disclosure of significant risks incidental to treatment would have resulted in a decision against it." Canterbury v. Spence, 464 F.2d 772, 790 (D.C.Cir.), cert. denied, 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518 (1972). See 1 S. Pegalis & H. Wachsman, American Law of Medical Malpractice § 2:15 at 102-103 (1980) ("It is universally accepted that the plaintiff cannot recover, in the absence of proof by a preponderance of the evidence, that the patient would have withheld consent to the course of treatment or procedure in the face of the required and adequate disclosure of the risks and alternatives.").
 
 
 6
 In this case, appellant testified only that she would not have undergone the surgery had she known of the risk of hemopneumothorax. Tr. 110. She did not testify that she would have foregone the surgery had she known of the risk of pneumothorax. Indeed, she distinguished the risks of surgery about which she had been warned (Tr. 56-58) by saying:
 
 
 7
 These complications were explained as things that could be taken care of in the office, that were not life-threatening, that would not disable you, that were of a very short time, you know, in order to clear them up.
 
 
 8
 Tr. 110. These complications are compatible with a collapsed lung or pneumothorax. Since a collapsed lung is a short-term, nondisabling, nonlife-threatening condition that is responsive to treatment, a warning as to the risk of pneumothorax would presumably not have affected Mrs. Flannery's election of surgery.
 
 
 9
 Nor did appellant ever prove that she would have chosen general anesthesia as opposed to local anesthesia if she had been warned of pneumothorax. Appellant's expert witness, Dr. Lear, did testify that both anesthetic procedures entailed risks. Tr. 393-395. But appellant never attempted to prove that, if only she had known of the one-in-a-thousand risk of a collapsed lung, she would have chosen general anesthesia and its associated risks over a local anesthetic procedure.[1]
 
 
 10
 We do not dispute that patients should be warned of all material risks not only of the operating procedure itself but also of anesthetic procedures. Thus, under Canterbury v. Spence, supra, a doctor has a duty to provide specific warnings of material risks associated with both surgical and anesthetic procedures. In this case, however, appellant did not establish a causal link between a failure to warn and the injuries suffered. Accordingly, the grant of a directed verdict must be
 
 
 11
 Affirmed.
 
 WALD, Circuit Judge, dissenting:
 
 12
 I dissent from affirmance of the district court's directed verdict on the issue of disclosure of risk to the patient. I believe that under the standards established in Canterbury v. Spence, 464 F.2d 772 (D.C.Cir.), cert. denied, 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518 (1972), there was sufficient evidence to leave to the jury decision on the causal relationship between the patient's injury and the physician's failure to disclose to the patient the risk of pneumothorax (perforation of the pleura) incident to the use of intercostal nerve block anesthesia. The panel opinion admits that "(t)he fact that plaintiff developed the more serious hemopneumothorax should not excuse a failure to warn of the less serious pneumothorax." I agree, but my own reading of the record supports the further conclusion that plaintiff's proof was adequate to go to the jury on the issue of whether "a prudent person in the patient's position would have decided (against the anesthesia) if suitably informed of all perils bearing significance." Id. at 791.
 
 
 13
 I do not understand the panel's reasoning that the patient's testimony to the effect that she was warned of the risks of the surgery itself and nonetheless undertook it (Tr. 56-66) can be relevant to whether, if warned of the risks attending this kind of anesthesia, she would not have chosen a different kind of anesthesia. Obviously, each decision requires an independent assessment of the relative risks and benefits. Ms. Flannery's testimony showed that, for a host of reasons, she wanted the operation itself enough not to be deterred by warnings of possible infection and hemotoma, described as complications of a non-life-threatening or non-disabling nature which "could be taken care of in the office." Tr. 59. It would have been an altogether different decision for her to accept, in addition to these risks of surgery, the further risk of pneumothorax stemming from the anesthesia. While not permanently disabling, such a complication nonetheless involves the possibility of a collapsed lung and hospitalization for painful suction procedures. In Canterbury we said:
 
 
 14
 "(a) risk is thus material when a reasonable person, in what the physician knows or should know to be the patient's position, would be likely to attach significance to the risk or cluster of risks in deciding whether or not to forego the proposed therapy."
 
 
 15
 464 F.2d at 787 (quoting Waltz & Scheuneman, Informed Consent to Therapy, 64 N.W.U.L.Rev. 628, 640 (1970)).
 
 
 16
 I find enough support* in this record for a jury to find that a patient, already knowledgeable about risks of the surgery itself, might have decided differently about having an intercostal nerve block rather than a general anesthesia if confronted with information that additional risks to the same general area of the body were attendant to this mode of anesthesia. Although the risk of pneumothorax was comparatively small (.10%) and the potential consequences limited, "(t)here is no bright line separating the significant from the insignificant; the answer in any case must abide by a rule of reason." Id. at 788.
 
 
 17
 This plaintiff in fact was told nothing about any problems with an intercostal nerve block; she suffered a hemopneumothorax as a result of the anesthesia-a rarer but far more serious condition than pneumothorax-caused by blood from a nicked vein or artery seeping into a punctured pleura. (The puncture itself would cause only a pneumothorax.) She now has some permanent lung disability and has had to undergo several hospitalizations and episodes of intense pain.
 
 
 18
 In my opinion, viewing her evidence, and inferences reasonably drawn therefrom in her favor, as we must when reviewing a directed verdict, her case deserved to go to the jury, and I would reverse and remand for a new trial.
 
 
 
 *
 Of the United States District Court for the Southern District of New York, sitting by designation pursuant to 28 U.S.C. § 294(d) (1976)
 
 
 [1]
 In summarizing the evidence, appellant stated only that "Mrs. Flannery testified that she would not have undergone the bilateral augmentation mammoplasty (breast augmentation) procedure had she been aware of the risks of the intercostal nerve block procedure." Brief for Appellants at 4
 
 
 *
 See, e.g., testimony to the effect that the risks of pneumothorax accompanying intercostal nerve block were known to the medical profession, Tr. 198, 611, 626, and that patients should be warned before the procedure to stay still and why, i.e., that any untoward movement on their part can cause the needle to penetrate the pleura, Tr. 368-69. See Tr. 470 (court's reference to such testimony). One doctor testified that he warns patients against intercostal nerve block because it is a "finicky procedure" that requires delicate maneuvering and that general anesthesia is safer. Tr. 393